MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:      2013 ME 57
Docket:        Aro-12-324
Submitted
 On Briefs:    May 30, 2013
Decided:       June 11, 2013

Panel:         SAUFLEY, C.J., and ALEXANDER, SILVER, GORMAN, and JABAR, JJ.

## IN RE C.P. et al.

SAUFLEY, C.J.

[¶1]  The mother and father of two children, C.P. and C.P., appeal from a judgment of the District Court (Houlton, *O'Mara, J.*) terminating their parental rights to the children pursuant to 22 M.R.S. § 4055(1)(B)(2) (2012).  The father challenges the finding of unfitness, and both parents challenge the determination that termination of their parental rights is in the children's best interests given the possibility that the children, ages thirteen and ten at the time of the termination of parental rights, might not be adopted and could remain in long-term foster care. We affirm the judgment of the District Court.

## I.  BACKGROUND

[¶2]  On May 26, 2010, the children were removed from the home of the mother and her boyfriend based on allegations of domestic violence and both adults' abuse of substances.  The father could not provide a suitable placement

because he had been in jail for assaulting the mother, was abusing substances, and lived with his brother, who is a substantiated child sex offender.

[¶3]    After a contested summary preliminary hearing, *see* 22 M.R.S. § 4034(4) (2012), the court ordered that the children remain in the custody of the Department.  The court held a jeopardy hearing in August 2010, *see* 22 M.R.S. § 4035 (2012), and found that the children were in circumstances of jeopardy that necessitated continued placement with the Department.  Following multiple judicial reviews and permanency planning hearings, *see* 22 M.R.S. §§ 4038, 4038-B (2012), the Department petitioned for termination of the parental rights of both parents in July 2011 due to the parents' lack of progress and the children's needs for permanency.

[¶4]  A trial was held over the course of four days in April and May 2012. Based on the evidence presented, the court entered a judgment terminating both parents' parental rights to the two children on June 14, 2012.  The court found three bases of unfitness as to each parent[1] and determined that termination of each

---

[1]  The three statutory grounds of unfitness are as follows:

(i) The parent is unwilling or unable to protect the child from jeopardy and these circumstances are unlikely to change within a time which is reasonably calculated to meet the child's needs;

(ii) The parent has been unwilling or unable to take responsibility for the child within a time which is reasonably calculated to meet the child's needs; [or]

. . . .

parent's parental rights was in each child's best interest. *See* 22 M.R.S. § 4055(1)(B)(2)(a), (b)(i), (ii), (iv). The parents moved for findings of fact, and the court adopted some of their proposed findings.

[¶5] The court found that both parents had failed to put the children first in their lives and had impeded reunification by putting up roadblocks to their own rehabilitation. The court also found that, two years after removal, neither parent could safely care for the children. In terminating the parents' parental rights, the court reasoned that placement with either parent "would not be safe and would quite likely fail." Finally, the court found that the children need permanency now and that long-term foster care is inherently impermanent. Therefore, the court determined that, although "[t]he adoption process is not perfect," the termination of both parents' parental rights was in the children's best interests.

[¶6] The parents timely appealed from the court's judgment. *See* 22 M.R.S. § 4006 (2012); M.R. App. P. 2(b)(3).

---

(iv) The parent has failed to make a good faith effort to rehabilitate and reunify with the child pursuant to section 4041.

22 M.R.S. § 4055(1)(B)(2)(b) (2012).

## II. DISCUSSION

A.    Unfitness

1.    Findings of the Court

[¶7]  The court made the following findings regarding parental fitness, all of which are supported by competent evidence in the record.  *See In re M.B.*, 2013 ME 46, ¶¶ 37, 39, --- A.3d ---.  Although the father and the children have a bond and he consistently visited with them, he has barely begun to address the issues that brought the children into care.  In particular, the father fails to accept or recognize the threat posed to the children by his brother; admittedly lives in housing that is not appropriate for the children; failed to meet with, or even call, the GAL because he does not like him or want to see him; refused to participate in some drug screens based on flimsy excuses; failed other drug screens; failed to acknowledge the reasons that his children are not with him and to take all necessary steps to ameliorate jeopardy; blamed others for his family's situation; and failed to recognize the immediate need of his children for him to provide a permanent home.

[¶8]  The mother[2] has continually failed drug screens due to marijuana and, more recently, Suboxone use.  She maintains a relationship with her abusive

---

[2]  The mother does not challenge the court's finding of unfitness.  These facts are included to provide context for the court's determination of the children's best interests.

boyfriend[3] and left the state with him a week before the hearing, causing her to miss a court date in another matter. She failed to recognize and accept her involvement in the loss of her children; to take all necessary steps to ameliorate jeopardy; to participate in a psychological evaluation and assessment and follow through with individual counseling; to arrive at court events on time or at all, including on the first day of the termination hearing; and to recognize that the children need her to provide a permanent home immediately.

2.     Review of the Finding that the Father is Unfit to Parent these Children

[¶9]  Only the father challenges the court's findings regarding his parental fitness. "When the burden of proof at trial is clear and convincing evidence, our review is to determine whether the fact-finder could reasonably have been persuaded that the required findings were proved to be highly probable." *In re M.B.*, 2013 ME 46, ¶ 37, --- A.3d --- (quotation marks omitted).

[¶10]  Given the court's findings, all of which are supported by competent evidence in the record, *see id.* ¶ 39, we discern no error in the court's determinations that it was highly probable that the father was unwilling or unable to protect the children from jeopardy or to take responsibility for them within a time reasonably calculated to meet their needs, and that he failed to make a good

---

[3]  The mother had two children with that abusive boyfriend. C.P. and C.P. are afraid of the mother's boyfriend and what he might do to their mother. The mother's and boyfriend's parental rights to their older child have been terminated, and the termination of their parental rights to their younger child is currently on appeal to us in a separate matter.

6

faith effort to rehabilitate and reunify with the children.  *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i), (ii), (iv); *In re M.B.*, 2013 ME 46, ¶ 37, --- A.3d ---; *see also* 22 M.R.S. § 4041(1-A)(B) (2012).

B.      Best Interests of the Children

[¶11]   The parents argue that the children are at risk of being in long-term foster care, without parental involvement, because the prospects for adoption are not certain.   They contend that the termination of their parental rights will not make their children's living situations more permanent and will expose the children to emotional harm resulting from the loss of their parents' involvement in their lives.

1.       Findings Regarding the Children's Best Interests

[¶12]    The court made the following findings regarding the children's circumstances.  From the time of the children's removal in May 2010 until early January 2012, they lived in a foster home in Fort Fairfield.  Because of a foster parent's medical issues, the children were quickly moved to a new foster home in Danforth, which was difficult for the children because they had to adjust to a new school and service providers.   At the time of the hearing, the Department anticipated that another change in placement was upcoming.

[¶13]  Both children have busy schedules because they attend school, multiple weekly visits with their parents, and counseling.  They would like to have time to themselves.

[¶14]  The children have significant needs.  The thirteen-year-old child has Asperger's disorder and depressive disorder.  He finds transition difficult and needs predictable, structured, familiar routines and rules.  Highly stimulating environments often overwhelm him.

[¶15]  The ten-year-old child has been diagnosed with oppositional defiant disorder, attention deficit hyperactivity disorder, and anxiety.  She is reserved, does not like to be touched, and is not prepared to engage fully in counseling.  With predictability, consistency, and permanency, she could overcome the oppositional defiant disorder and anxiety.  Any future placement must be successful to be in her best interest; she needs a permanent home now.  The children are strongly connected to each other and should be placed in the same home together.

2.    Review of the Court's Best Interest Determinations

[¶16]  In reviewing a court's determination of the best interest of a child in a child protection proceeding, "we review the court's factual findings for clear error but its ultimate conclusion for an abuse of discretion, viewing the facts, and the weight to be given them, through the trial court's lens."  *In re M.B.*, 2013 ME 46, ¶ 37, --- A.3d --- (citation and quotation marks omitted).

8

[¶17]  The court's findings and analysis demonstrate that it fully considered the statutorily defined purposes for terminating parental rights in determining that termination of parental rights was in these children's best interests.  *See* 22 M.R.S. § 4050 (2012).  Particularly, the court evaluated whether the termination of parental rights in this matter would prevent the children from having to "wait unreasonable periods of time for their parents to correct the conditions which prevent their return to the family" and would "[p]romote the adoption of [the] children into [a] stable famil[y] rather than allowing [the] children to remain in the impermanency of foster care."  *Id.* § 4050(2), (3).

[¶18]  As the court noted, long-term foster care is inherently impermanent and therefore disfavored as a permanency plan for children.  *See In re David W.*, 2010 ME 119, ¶¶ 6-8, 8 A.3d 673; *In re Thomas H.*, 2005 ME 123, ¶¶ 24-30, 889 A.2d 297.  Despite possible challenges in locating an adoptive placement for older children who have special needs, their adoption is not impossible, and the guardian ad litem specifically testified that adoptions of children with high needs do happen.  The court was in no way imposing a permanency plan for long-term foster care by terminating the parental rights of the mother and father.  The permanency plan will require the Department to seek a permanent adoptive home for the children.

[¶19]  Based on the court's findings of fact, which are amply supported by competent evidence in the record, the court acted within its discretion, *see In re*

*M.B.*, 2013 ME 46, ¶¶ 37, 39, --- A.3d ---, when it reached the ultimate determination, consistent with the guardian ad litem's opinion, that for these children, being freed for adoption is greatly preferable to waiting, with little likelihood of success, for either of the parents to create a safe home for them.  In such circumstances, where the only real hope for children is to be placed in a healthy, supportive, and permanent adoptive home, the court does not err or abuse its discretion in finding termination to be in the best interests of the children, even if the possibility of adoption is less than certain.  As the guardian ad litem[4] testified, "these children do need permanence.  They will have special needs for the rest of their lives.  The right home, hopefully, if it could be found, could really do wonderful things for these kids."

[¶20]  The court's determination that the children's best interests required that they be legally freed for adoption as soon as possible is both well supported by the record and consistent with the legislatively expressed policy that children need and deserve permanent healthy families.

The entry is:

Judgment affirmed.

---

[4]  The guardian ad litem began working with these children on a pro bono basis at the request of a judge when the parents became involved in a contentious family matter.  He was later appointed as guardian ad litem in this child protection proceeding.

**On the briefs:**

Matthew A. Hunter, Esq., Presque Isle, for appellant mother

Michele D. L. Kenney, Esq., Houlton, for appellant father

William J. Schneider, Attorney General, and Nora Sosnoff, Asst. Atty. Gen., Augusta, for appellee Department of Health & Human Services

Houlton District Court docket number PC-2010-004
FOR CLERK REFERENCE ONLY