MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2019 ME 67
Docket:        Cum-18-466
Submitted
  On Briefs:   April 24, 2019
Decided:       May 9, 2019

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

## IN RE CHILD OF CARL D.

PER CURIAM

[¶1]  Carl D. and the mother of his child appeal from a judgment of the District Court (Portland, *Powers*, *J.*) terminating their parental rights to their child.  22 M.R.S. § 4055(1)(B)(2)(a), (b)(i)-(ii) (2018).  The father challenges the court's unfitness determination, and both parents contend that termination of their parental rights is contrary to the best interest of their child.  We affirm the judgment.

## I.  BACKGROUND

[¶2]  On September 22, 2016, the Department of Health and Human Services filed a child protection petition and a request for a preliminary protection order.  *See* 22 M.R.S. §§ 4032, 4034 (2018). The petition alleged that the mother exposed the child to unsafe individuals and violence in the home and that both parents have been unable to keep the child safe and meet the child's significant behavioral needs.  The court (*Darvin*, *J.*) entered an order

transferring custody of the child to the Department on the same day. On December 29, 2016, the court (*Powers, J.*) entered a jeopardy order, with the parties' agreement, and custody remained with the Department. *See* 22 M.R.S. § 4035(1)-(2) (2018).

[¶3] The Department first petitioned for termination of the parents' rights on August 9, 2017, *see* 22 M.R.S. § 4052 (2018); however, the Department withdrew the petition during a period of trial placement with the father. The Department filed a second petition for termination of the parents' rights on May 30, 2018, after the child had been removed from the parents' care and placed in a residential treatment setting. The court held a three-day hearing on the petition and, on November 6, 2018, found by clear and convincing evidence that the parents are unwilling or unable to protect the child from jeopardy or take responsibility for the child within a time that is reasonably calculated to meet the child's needs, and that termination of the parents' rights is in the best interest of the child. *See* 22 M.R.S. § 4055(1)(B)(2)(a), (b)(i)-(ii).

[¶4] The court based its decision on the following factual findings, all of which are supported by competent evidence in the record.

> This case has been pending for over 25 months, resulting in [the child's] removal from the home. [The child] has had recent mental health hospital and crisis center stays. [The child] suffered from trauma at home with [the] mother[,] who was caring for [the

child]. The father was in New York and not actively involved. The mother has had alcohol and drug use issues since she was a teenager. She is now 42. She has also had mental health diagnoses, which have required her to take several medications. [The mother] has led a chaotic life and she still does except for obtaining an appropriate apartment in 2017. [The mother] has apparently been "clean" for a few months except that she smokes marijuana daily. She has not been totally honest with providers about her alcohol and drug use history and has had some positive tests in 2017 and 2018. [The mother] admits that her alcohol issue is substantial, and it has affected her ability to be a safe and stable parent. She has had counseling off and on for years and still struggles with substance use and her mental health. Two separate trial placements with both parents have failed. [The mother's] obvious love for [the child] is not enough to keep [the child] safe.

[The father] has had some substance abuse counseling in New York but still has not been able to keep his drinking under control. He had a driving under the influence conviction there and started treatment in February 2017. His counselor opines believably that the [child's] father needs to be completely abstinent. The treatment ended in January 2018, and it is clear [the father] has continued to drink alcohol. He admits his problems typically relate to alcohol. He has also tested positive in 2017 for marijuana.

[An] April 16, 2018 incident [occurring during the child's second trial placement with the father] involved improper use of alcohol and untruthful statements about what happened when he went out to bars and later had an argument with [the mother] after hiding a woman in the apartment. Police came, and the father's second trial placement ended. [The father] admitted that he really made a huge mistake that evening. This episode shows [the father] is not serious about resolving his alcohol issues.

[The father] has had inconsistent visits with [the child] throughout. One original goal was to develop a solid relationship with [the child]. He has come to Maine for the trial placements and

has driven to see [the child] at times. He has had some phone contact, but not regularly. The contacts themselves go quite well. [The father] says he would like to take [the child] to New York to live but he has not established stable housing since this case began. [The father] knows his [child has a developmental disorder] but feels [the child] is really just a "normal" kid going through some "things." That shows [the father] does not understand his [child's] serious needs. [The father's] life is itself chaotic and he cannot come close to meeting [the child's] need[s] or protecting him from jeopardy now or in any reasonable future time. [The father] also truly cares for [the child] and wants to be [the child's] ongoing parent.

. . . .

This case has been pending over two years and [the child] still has serious and numerous special needs that will continue to require services. . . . [The child] has had many placements and is now at . . . a specialized program that is helping [the child] progress. [The child] will need ongoing assistances as well. [The child] truly requires a stable, understanding, and caring caregiver with a routine that suits [the child's] needs. Bouncing around from placement to placement and being subject to ongoing judicial reviews are not giving [the child] the permanency [the child] needs. . . .

[The child] certainly has a close relationship with [the] mother and some with [the] father. [The child] will no doubt suffer an emotional loss if their rights are terminated. . . . These parents are willing to be the parent [the child] needs, but they cannot be parents who can provide a safe and nurturing home for [the child] now or in the near future. These parents have had over two years to deal with serious parenting issues without meaningful success, and [the child] simply cannot wait longer to have a suitable, permanent home. Thus, the statutory mandate for permanency overcomes the parents' desires to continue their quest to regain a parenting role.

## II. DISCUSSION

[¶5]  On appeal, the father challenges the court's finding that he is unfit, and both parents challenge the court's overall determination that termination of their individual parental rights is in the child's best interest.  We review the trial court's factual findings for clear error and will vacate a finding only if "there is no competent evidence in the record to support it; if the fact-finder clearly misapprehends the meaning of the evidence; or if the finding is so contrary to the credible evidence that it does not represent the truth and right of the case."  *Guardianship of Hailey M.*, 2016 ME 80, ¶ 15, 140 A.3d 478 (citations and quotation marks omitted); *see also In re Child of Ronald W.*, 2018 ME 107, ¶ 6, 190 A.3d 1029.  We review the court's "ultimate conclusion regarding the best interest of the child for an abuse of discretion, viewing the facts, and the weight to be given [to] them, through the trial court's lens." *In re R.M.*, 2015 ME 38, ¶ 7, 114 A.3d 212.  Because the trial court is "able to directly evaluate the testimony of the witnesses," we give substantial deference to the court's judgment on the issue of best interest.  *In re Caleb M.*, 2017 ME 66, ¶ 33, 159 A.3d 345.

6

A.      Fitness Determination

[¶6]  The father argues that there was insufficient evidence for the court to conclude that he was unfit to parent his child and that the court erred in calculating the time reasonably calculated to meet the child's needs. *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i)-(ii).  Contrary to the father's arguments, there was substantial evidence from which the court determined that the father was presently unfit and would be unable to protect or take responsibility for his child in a time reasonably calculated to meet the child's needs. *See id*.  As we have made clear on previous occasions, while the inquiry concerning parental unfitness "is prospective, the evidence to be considered is retrospective." *In re Charles G.*, 2001 ME 3, ¶ 7, 763 A.2d 1163.  In every case, the court must gauge the reasonable timeframe from the child's perspective. *See id*; *see also In re Jamara R.*, 2005 ME 45, ¶ 22, 870 A.2d 112 ("[O]nce a child has been placed in foster care, a statutory clock begins ticking.  In setting that clock, the Legislature has spoken in terms of days and months, rather than in years, as might better fit an adult's timeframe for permanent change."), *overruled in part on other grounds by In re B.C.*, 2012 ME 140, ¶ 14 n.2, 58 A.3d 1118.  In this case, considering the significant needs of the child and the numerous placements, the court did not clearly err in finding by clear and

convincing evidence that the father was unable or unwilling to protect the child from jeopardy or take responsibility for the child within a time reasonably calculated to meet the child's needs. *See* 22 M.R.S. § 4055(1)(B)(2)(B)(i)-(ii); *In re Child of Ronald W.*, 2018 ME 107, ¶ 6, 190 A.3d 1029.

B.    Best Interest Determination

[¶7]   Both parents challenge the court's conclusion that it is in their child's best interest for their parental rights to be terminated. They argue that there was insufficient evidence to support the court's determination because the child's significant needs will make adoption difficult, or impossible, and each is willing to provide a loving, permanent home. Contrary to their arguments, the court did not abuse its discretion in determining, by clear and convincing evidence, that termination of the parents' rights was in the child's best interest.

[¶8]   The need for permanency is a central tenet of Maine's Child and Family Services and Child Protection Act. 22 M.R.S. §§ 4001-4099-C (2018); *see also In re Thomas H.,* 2005 ME 123, ¶ 23, 889 A.2d 297. "[L]ong-term foster care is inherently impermanent and therefore disfavored as a permanency plan for children." *In re C.P.,* 2013 ME 57, ¶ 18, 67 A.3d 558; *see also* 22 M.R.S. §4050. Absent a compelling reason to support it, long-term foster care is "contrary to

the welfare of children" because the uncertainty of foster care affects the stability of children and the ability of caregivers to meet their needs. *In re Thomas H.*, 2005 ME 123, ¶¶ 25, 33, 889 A.2d 297. These principles apply even when adoption is less certain because of a child's individual needs. *See In re C.P.*, 2013 ME 57, ¶ 19, 67 A.3d 558 ("In such circumstances, where the only real hope for children is to be placed in a healthy, supportive, and permanent adoptive home, the court does not err or abuse its discretion in finding termination to be in the best interests of the children, even if the possibility of adoption is less than certain.").

[¶9] "Permanency is a dynamic concept that must be fashioned from the actual circumstances and needs of the child or children before the court." *In re Marcus S.*, 2007 ME 24, ¶ 10, 916 A.2d 225. In this case, the child's behavioral and educational needs are significant. During the pendency of this case, the child moved between nineteen placements, including two unsuccessful trial placements with each parent and at least six therapeutic residential settings. There was sufficient evidence for the court to find that the child "requires a stable, understanding, and caring caregiver with a routine that suits [the child's] needs" and that "[b]ouncing around from placement to placement and being subject to ongoing judicial reviews are not giving [the child] the

permanency [the child] needs." The parents both face individual challenges that they have been unable to overcome despite their efforts. Although there is no doubt that the parents love and are willing to care for their child, the court did not err by finding that they are unable to provide the level of stability and care necessary to meet their child's significant needs. Therefore, even if placing the child in an adoptive home may be challenging, the court did not abuse its discretion in concluding that termination of the parent's rights was in the best interest of the child.[1] *See In re R.M.*, 2015 ME 38, ¶ 7, 114 A.3d 212; *In re C.P.*, 2013 ME 57, ¶ 19, 67 A.3d 558.

The entry is:

Judgment affirmed.

---

[1] The mother makes one further argument that the court erred in terminating her parental rights because the court had other available permanency options outside of adoption, namely another planned permanent living arrangement (APPLA). 22 M.R.S. § 4038-B(4)(A)(5) (2018). APPLA was not an available option at this, or any, stage of the case because the child has not yet attained fourteen years of age. *See* 42 U.S.C.S. § 675(5)(C)(i) (LEXIS through Pub. L. No. 116-8).

James S. Hewes, Esq., South Portland, for appellant father

Nathaniel Seth Levy, Esq., Brunswick, for appellant mother

Aaron M. Frey, Attorney General, Jamie Lynn Bice, Stud. Atty., and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Portland District Court docket number PC-2016-80
FOR CLERK REFERENCE ONLY