MAINE SUPREME JUDICIAL COURT                          Reporter of Decisions
Decision:      2019 ME 120
Docket:        Som-19-66
Submitted
  On Briefs:   July 18, 2019
Decided:       July 25, 2019

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HJELM, JJ.


IN RE CHILD OF NATHANIEL B.


PER CURIAM

[¶1]   Nathaniel B. appeals from a judgment of the District Court (Skowhegan, *Nale, J.*) terminating his parental rights to his child.[1]  In accordance with the procedure outlined in *In re M.C.*, 2014 ME 128, ¶¶ 6-7, 104 A.3d 139, counsel for the father filed a brief indicating that there are no arguable issues of merit for appeal.  We entered an order permitting the father to personally file a supplemental brief on or before May 15, 2019, but he did not do so.  We affirm the judgment.

[¶2]   The Department of Health and Human Services filed a petition for child protection and preliminary protection orders two days after the child was born in March 2018.  The petition alleged, among other things, that the child

---

[1] The parental rights of the child's mother were terminated by the same judgment, but the mother does not appeal; we focus on the procedural history and findings pertaining to the father.  The father and mother both have other children, but those children are not the subject of this child protection action.

was in circumstances of jeopardy because of the father's unstable housing, frequent encounters with law enforcement, history of domestic violence, involvement with unsafe people, and inability to care for his other children safely. The court (*Benson, J.*) issued a preliminary protection order granting the Department custody of the child, and the child was placed in foster care. The father waived his right to a summary preliminary hearing, *see* 22 M.R.S. § 4034(4) (2018), and he later agreed to the entry of an order finding jeopardy to the child based on his recent arrest for theft, failure to participate in any scheduled drug screens, lack of involvement with the child, and inability to attend to the child's needs, *see* 22 M.R.S. § 4035 (2018). In September 2018, the Department petitioned for the termination of the father's parental rights to the child.

[¶3]  At the hearing on the termination petition in January 2019, the father's attorney was present, but the father did not appear even though the court found that he had received notice of the hearing. Based on the evidence presented at the hearing and the prior orders in the case, the court (*Nale, J.*) orally stated its conclusion that the State had proved by clear and convincing evidence that the father was parentally unfit pursuant to three of the statutory

definitions of unfitness and that termination of the father's parental rights was

in the best interest of the child.

[¶4]  A week later, the court issued a written judgment and made the

following findings of fact by clear and convincing evidence.

> As an initial matter, the Court has no trouble whatsoever concluding the Department made reasonable efforts to rehabilitate and reunify the family, as well as reasonable efforts to finalize the permanency plan.  The evidence was overwhelming that the parents were offered all conceivably necessary services and that the Department went above and beyond.  The crux of the problem was the parents' failure to engage.

> The Court found the testimony of [a] former D.H.H.S. caseworker . . . particularly credible in this regard.  The parents were provided with, *inter alia*, D.H.H.S. social worker services, safety assessment and planning, family team meetings, supervised visitation, and referrals for outside services, but they largely squandered these opportunities to participate, alleviate jeopardy, and take responsibility for raising [the child].  In this sense, their failure to appear for trial was consistent with their performance throughout much of this child protection case, when they missed family team meetings, [the child's] appointments, and even opportunities to visit with her.  The fact that the visits that did occur were largely positive makes it all the more tragic that neither parent's visit attendance was acceptable, and that the parents sometimes chose to depart early from the visits that did occur.  By the time of trial, it appears neither parent had visited with the child since the foster mother brought her to the hospital just prior to the mother's surgery last fall.  (It should be noted that the father was invited to this visit and failed to appear, although he had led the foster mother to believe that he was coming.)

> For his part, the father participated in only about fifteen minutes of a two-hour counseling assessment and no other

services whatsoever. The Jeopardy Order had warned him that missed screens would count as positive screens, but he never participated in a single substance screen scheduled by the Department. . . .

Had the parents, or either one of them, actually gotten engaged in a productive manner, this case could and should have been on track for a successful reunification. It should be noted that both parents have other children to whom their parental rights have not needed to be terminated. . . . The father's sons are with their mother, and the father is able to visit with them under safe circumstances at his parents' home. However, in this particular case both parents failed to live up to their responsibilities in a timely fashion, and that constitutes unfitness within the framework the Legislature has provided in the Child Protection Act.

The parents were also unduly difficult for the D.H.H.S. caseworkers to reach and remain in communication with, often declining to inform the Department where they were living, staying, or working at any given time. They remained in a relationship with one another throughout much of the case, but there appeared to be chaos constantly swirling around them as they dealt with one arrest or criminal prosecution after another and moved from place to place without keeping the necessary parties informed of their whereabouts or how to reach them.

. . . .

. . . [The father] evidently texted the foster mother on the morning of the [termination] hearing indicating he was opting not to take the taxi ride to court because he did not like his chances at trial and because he apparently was not even certain whether [the child] was his, biologically.

Under the circumstances, this Court concludes, to the clear-and-convincing standard, that:

a) The parents are unwilling and unable to protect the child from jeopardy, and these circumstances are unlikely to change within a time reasonably calculated to meet the child's needs;

b) The parents have been unwilling and unable to take responsibility for the child within a time reasonably calculated to meet the child's needs; and

c) Most compellingly, the parents have failed to make a good faith effort to rehabilitate and reunify with the child pursuant to 22 M.R.S. § 4041.

Having concluded that the parents are unfit within the statutory framework, the Court proceeds to find that termination of parental rights is in the child's best interest. Like all children, [the child] is in need of protection and permanency. [This child] in particular has been in foster care since shortly after her birth. She has been in the same home with her foster mother and foster father and three older foster brothers since that time, and this home has been for her a safe harbor where she has been loved and cherished. The guardian *ad litem*, who has great credibility with the Court, reports that all [the child's] needs are met in the foster home, where she is thriving, and that it has been a joy to see her grow, develop, and blossom there. Had the parents given any indication whatsoever that they were willing or able to do the hard work necessary to reunify, the Court could have entertained a longer reunification period, but a[s] this matter presently stands, with no alleviation of jeopardy in sight, the Court is left to conclude that termination now is in this child's best interest.

[¶5] These findings, all of which are supported by competent record evidence, are sufficient to support the court's determination that the father is unwilling or unable to protect the child from jeopardy or to take responsibility for her within a time that is reasonably calculated to meet her needs, and that

he failed to make a good faith effort to rehabilitate and reunify with the child. *See* 22 M.R.S. §§ 4041(1-A)(B), 4055(1)(B)(2)(b)(i)-(ii), (iv) (2018); *In re C.P.*, 2013 ME 57, ¶¶ 9-10, 67 A.3d 558.  The findings are also sufficient to support the court's determination that termination of the father's parental rights is in the child's best interest. *See* 22 M.R.S. § 4055(1)(B)(2)(a) (2018); *In re Caleb M.*, 2017 ME 66, ¶¶ 33-34, 159 A.3d 345.

The entry is:

Judgment affirmed.

---

Harold J. Hainke, Esq., Hainke & Tash, Whitefield, for appellant father

The Department of Health and Human Services did not file a brief

Skowhegan District Court docket number PC-2018-24
FOR CLERK REFERENCE ONLY