MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2020 ME 86
Docket:        Oxf-20-20
Submitted
  On Briefs:   May 28, 2020
Decided:       June 9, 2020
Revised:       June 23, 2020

Panel:         GORMAN, JABAR, HUMPHREY, HORTON, and CONNORS, JJ.


IN RE CHILDREN OF JASON C.


PER CURIAM

[¶1] Jason C. appeals from a judgment of the District Court (South Paris, *Ham-Thompson, J.*) terminating his parental rights to his two children. *See* 22 M.R.S. § 4055(1)(B)(2)(a), (b)(i)-(ii), (iv) (2020). The father argues that the Department of Health and Human Services did not present sufficient evidence upon which the trial court could find that he is parentally unfit, and contends that the court abused its discretion in finding that termination is in the children's best interests. We affirm the judgment.

## I. BACKGROUND

[¶2] In August 2019, the Department petitioned to terminate the father's parental rights as to both children.[1] *See* 22 M.R.S. § 4052 (2020). The trial court

---

[1] The mother appeared before the trial court on December 6, 2019, and consented to the termination of her parental rights as to both children. *See* 22 M.R.S. § 4055(1)(A)(1)(a), (1)(B)(1)

2

held a one-day hearing on the petition on December 4, 2019. *See* 22 M.R.S. § 4054 (2020). The father was present at the hearing and was represented by counsel.

[¶3] In a judgment dated December 20, 2019, the trial court terminated the father's parental rights to both children.[2] *See* 22 M.R.S. § 4055(1)(B)(2)(a), (b)(i)-(ii), (iv). The trial court found by clear and convincing evidence that the father is unwilling or unable to protect the children from jeopardy and these circumstances are unlikely to change within a time which is reasonably calculated to meet the children's needs, that the father has been unwilling or unable to take responsibility for the children within a time which is reasonably calculated to meet the children's needs, and that the father has failed to make a good faith effort to rehabilitate and reunify with the children. *See id.* § 4055(1)(B)(2)(b)(i)-(ii), (iv). The trial court also found by clear and convincing evidence that termination of the father's parental rights is in the children's best interests. *See id.* § 4055(1)(B)(2)(a). Its findings are supported

(2020). The trial court (*Ham-Thompson, J.*) entered an order on December 6, 2019 terminating the mother's parental rights. The mother did not participate in this appeal.

[2] An amended order was entered on January 8, 2020, in order to correct a clerical error.

by competent evidence in the record. *In re Child of Carl D.*, 2019 ME 67, ¶ 4, 207 A.3d 1202.

[¶4] The trial court's judgment contained the following findings regarding the father's fitness:

> [The older child] has been exposed to his parents' untreated mental health issues, housing instability, domestic violence, and possible sexual abuse . . . .
>
> The Department first became involved with this family in July 2015 because of a report alleging [the father] had assaulted [the mother] while [the older child] was present. A second report was made in January 2016 alleging [the mother] assaulted [the father] and [the father] sexually abused [another family member]. DHHS closed its investigation when [a family member] obtained permanent guardianship of [the older child] in April 2016 and agreed to supervise all contact between [the father] and [the older child]. [The older child] continued to live with [the family member] until DHHS took custody of him on October 22, 2018.
>
> . . . .
>
> . . . Since birth, [the younger child] has likewise been exposed to her parents' untreated mental health issues, housing instability, domestic violence, and possible sexual abuse.
>
> . . . .
>
> At the time of trial, [the father] was 37 and living above the garage at his parent's home. . . . [The father] has not made any credible efforts to obtain housing.
>
> [The father] and [the mother] began dating when she was a minor. Their sexual relationship began when [the mother] was 14 and [the father] was 28. Their relationship has been turbulent from

its inception.  [The father] has beaten, starved, dominated, and controlled [the mother] from the very beginning.  When [the father] has been charged for domestic violence assault against [the mother], [the mother] would often recant her statements resulting in the charges being dismissed.

. . . DHHS has had ongoing involvement with this family beginning in 2015 due to reports of domestic violence, gross sexual assault charges [against the father], homelessness and failure to protect.  Each occasion DHHS became involved, a safety plan was put in place to try to protect the children.  DHHS set specific guidelines around [the father's] contact with [the mother] and/or the children and invariably he made multiple attempts to locate them which occasionally involved threats.

. . . On December 30, 2016, [the father] became enraged at [a family member] . . . .  In front of [the older child] he threatened [a family member], chased [a family member] down the hallway with [a] sledge hammer knocking things off the walls, unplugged the phones to prevent them from calling the police and told everyone that if the police were called nobody would be alive by the time the police arrived.  Terrified, the family sought and obtained Protection from Abuse Orders for one year.

In July 2017, DHHS filed a straight petition regarding [the younger child].  [The father] consented to a Jeopardy Order which includes some of the following findings: . . . . [The father] was charged with five counts of Gross Sexual Assault on a Child Under 12 (Class A), five counts of Unlawful Sexual Contact (Class B), and one count of Sexual Misconduct with a Child (Class C).  As a result of these charges, [the father] had bail conditions prohibiting him from having contact with children under the age of 12 . . . .

During the 2017 proceedings, [the father] refused all reunification services, in part, based on the pending criminal charges.

In the current child protective proceedings before the court, [the father] consented to a Jeopardy Order . . . . As part of the reunification process, [the father] was required to:

1. Follow treatment recommendations from the Sexual Offense Treatment and Evaluation;
2. Refrain from all criminal activity and obey any court orders; . . .
3. Complete a CODE [Court Ordered Diagnostic Evaluation] and follow recommendations;
4. Obtain and maintain safe and stable housing free from domestic violence, substance abuse, and unsafe people; [and]

. . . .

7. Work with a counselor to develop strategies to address domestic violence issues.

Despite being required to undergo a Sex Offense Assessment and Treatment Evaluation (SOATE) back in July of 2017, [the father] did not begin the assessment until November 29, 2018. . . .

The STABLE-2007 portion of the evaluation results identified areas of clinical concern to be [the father's] impulsivity, hostility toward women, lack of concern for others and deviant sexual interests.

Of particular concern were the results from the LOOK Assessment. "[The father's] findings suggest sexual interests in Adult Female, Juvenile Females, Mature Adult Females and Infant Females. His highest overall viewing was of Infant Females in the second administration of the test."

. . . .

In order to complete the SOATE, it was recommended that [the father] engage in further testing, one of which is a "sexual

history polygraph to assess the validity of his denial of the allegations against him to determine if there is a history of sexual offending behaviors." Based upon the initial results from the testing, [the evaluator] recommended [the father] does not have any contact with minor children . . . until such time as [the father] has completed all recommended testing. To date, [the father] has failed to undergo a sexual history polygraph.

After receiving the report from [the SOATE], [the father] became angry. [The father] refused to continue to work with the evaluator . . . . Further [the father] did not find any need for a polygraph. In January 2019, while meeting with his case worker . . . [the father] was unable to contain his hostility toward DHHS. [The father] disclosed . . . that he wanted to use a nuclear bomb to blow up DHHS and anyone else with badges. . . .

Upon learning of the credible threat, DHHS had [the father] served with a no trespass order. Supervised visitation facilities were no longer willing to work with [the father]. DHHS was able to get Auburn PD to allow for a supervised visit at the police station. However[,] after one visit, Auburn PD refused to allow additional visits to occur at its facility because of a lack of appropriate space for these visits to occur. Since that visit in June of 2019, [the father] has not had any contact with his children.

. . . .

. . . [The father] has failed to follow the treatment recommendations of SOATE; has failed to abide by the terms of the Jeopardy Order; has failed to complete the CODE evaluation; has failed to obtain and maintain safe and stable housing; and he has failed to fully engage with a mental health counselor to address his domestic violence issues. . . .

[The father] has a history of emotionally, physically and sexually abusing women and children. He is incapable of accepting responsibility for his actions. He refuses to engage in meaningful treatment. By failing to take responsibility for his actions, complete

the necessary assessments/evaluations, follow treatment recommendations, and obtain independent housing since July 2017 when DHHS filed its first petition, [the father] has failed to alleviate jeopardy.

[¶5]  The court also made the following supported findings regarding the best interests of the children:

[The older child] has not lived with either parent since he was a year old. . . .

. . . .

[The younger child] has never lived with [the father] and she has not resided with [the mother] since permanent guardianship was granted to [two family members] in July 2018.  When the placement . . . was no longer deemed safe, DHHS took custody of both children on October 22, 2018.  Since coming into DHHS custody, [the younger child] has moved seven times.  Most of the moves were a result of the foster parents being unable to manage [the older child's] behavior.

[¶6]  Based on these supported findings, the trial court concluded that the father was unwilling or unable to protect the children from jeopardy and that those circumstances were unlikely to change within a time reasonably calculated to meet their needs, and that the father has been unwilling or unable to take responsibility for the children within a time reasonably calculated to meet their needs.  22 M.R.S. § 4055(1)(B)(2)(b)(i)-(ii).  The court also concluded that the father had failed to make a good faith effort to rehabilitate and reunify with the children.  22 M.R.S. § 4055(1)(B)(2)(b)(iv).  Finally, the

8

court concluded that termination was in the best interest of each child. 22 M.R.S. § 4055(1)(B)(2)(a). The father timely appealed. *See* 22 M.R.S. § 4006 (2020); M.R. App. P. 2B(c)(1).

## II. DISCUSSION

### A. Sufficiency of the Evidence

#### 1. Parental Unfitness

[¶7] On appeal, the father contends that the record contains insufficient evidence for the trial court to conclude that he failed to make a good faith effort to rehabilitate and reunify with the children and therefore was unfit to parent the children. 22 M.R.S. § 4055(1)(B)(2)(b)(iv). "We review the court's findings of fact for clear error and the court's ultimate determination that termination of the parental rights is in the child's best interest for an abuse of discretion." *In re Olivia F.*, 2019 ME 149, ¶ 5, 217 A.3d 1106. "We will affirm an order terminating parental rights when a review of the entire record demonstrates that the trial court rationally could have found clear and convincing evidence in that record to support the necessary factual findings as to the bases for termination." *Id.* (quotation marks omitted). "A court need find only one of four statutory grounds of parental unfitness to find that a parent is unfit to parent his or her child. Where the court finds multiple bases for unfitness, we will

affirm if any one of the alternative bases is supported by clear and convincing evidence."[3]  *Id.* ¶ 6 (citation omitted) (quotation marks omitted); *see* 22 M.R.S. § 4055(1)(B)(2)(b) (2020).  "[T]he court must examine from the child's perspective—not the parent's—the time within which the parent can take responsibility for a child and protect that child from jeopardy."  *In re Children of Tiyonie R.*, 2019 ME 34, ¶ 6, 203 A.3d 824.

[¶8]  Contrary to the father's contentions, the trial court did not clearly err in finding that the father is unfit.  22 M.R.S. § 4055(1)(B)(2)(b)(i)-(ii), (iv).  The father has been unsuccessful in reaching any of the goals established in the 2017 jeopardy order.  He has not obtained permanent or safe housing for the children, and does not have any current plans to do so.  He belatedly engaged with the SOATE process, but has refused to comply with the counselor's recommendations for further testing.  He has not completed a Batterer's Intervention Program or otherwise availed himself of resources to address his domestic violence.  The father's violent threat against Department employees

---

[3]  The father does not argue on appeal that the trial court erred by finding that the father is unwilling or unable to protect the children from jeopardy and these circumstances are unlikely to change within a time which is reasonably calculated to meet the children's needs, and that the father has been unwilling or unable to take responsibility for the children within a time which is reasonably calculated to meet the children's needs.  22 M.R.S. § 4055(1)(B)(2)(b)(i)-(ii).  Nevertheless, we have considered the record evidence underpinning each of the three alternative grounds, and conclude that the trial court did not err in finding the father unfit on any of the three grounds. *See infra* ¶¶ 8-9.

has rendered supervised visits with the children impossible, and the father has not had any contact with the children in nearly a year. These facts, supported by competent record evidence, suggest that the father is unwilling or unable to protect the children from jeopardy, and that those circumstances are unlikely to change within a time reasonably calculated to meet their needs, as well as that that the father has been unwilling to unable to take responsibility for the children within a time reasonably calculated to meet their needs. 22 M.R.S. § 4055(1)(B)(2)(b)(i)-(ii).

[¶9] Competent record evidence also supports the trial court's finding that the father failed to make a good faith effort to rehabilitate and reunify with the children. 22 M.R.S. § 4055(1)(B)(2)(b)(iv). The father has refused to fully comply with the recommendations of the counselors with whom he has engaged. He has only superficially engaged with services related to his domestic violence issues. Despite encouragement from his mother and from the Department, he has not taken steps to obtain independent housing suitable for his children. He has not taken responsibility for his actions or acknowledged his role in placing the children in jeopardy.

2.     Children's Best Interests

[¶10]   The father also argues on appeal that the record contains insufficient evidence for the trial court to conclude that termination was in the children's best interests.  The father contends that, because the Department has not identified a permanent adoptive home for either of the two children, termination cannot, as a matter of law, be in their best interests.  Contrary to his contention, the record is sufficient to support the trial court's finding that termination of his parental rights is in the children's best interests, and the identification of adoptive homes is not a prerequisite to a finding that termination is in the children's best interests.  *See In re Children of Meagan C.*, 2019 ME 129, ¶ 20, 214 A.3d 9.  "We review the court's ultimate conclusion regarding the best interest of the child for an abuse of discretion, viewing the facts, and the weight to be given [to] them, through the trial court's lens."  *In re Child of Carl D.*, 2019 ME 67, ¶ 5, 207 A.3d 1202 (quotation marks omitted).

[¶11]   The record supports the trial court's conclusion that termination of the father's parental rights would facilitate permanency and stability, and therefore be in the children's best interests.  "Permanency is a dynamic concept that must be fashioned from the actual circumstances and needs of the child or children before the court."  *Id*. ¶ 9 (quotation marks omitted).  Here, both children have experienced significant instability throughout their short lives,

with care provided by family members and a host of foster families. The older child, especially, has significant behavioral challenges and requires expert care from caregivers who can devote their energy to his needs. The younger child has never lived with the father, and has never experienced stability in her life. Therefore, even absent identified adoptive placements for the children, the trial court did not commit clear error or abuse its discretion in concluding that termination of the father's parental rights was in the children's best interests.

## III. CONCLUSION

[¶12] The trial court did not clearly err in finding by clear and convincing evidence that the father was unable or unwilling to protect the children from jeopardy or take responsibility for the children within a time reasonably calculated to meet the children's needs, or in finding that the father failed to make a good faith effort to rehabilitate and reunify with the children. *See id.* § 4055(1)(B)(2)(b)(i)-(ii), (iv). Nor did the trial court commit clear error or abuse its discretion in determining that termination was in each child's best interest. *See In re M.B.*, 2013 ME 46, ¶ 37, 65 A.3d 1260; *id.* § 4055(1)(B)(2)(a).

The entry is:

Judgment affirmed.

Richard Charest, Esq., Lewiston, for appellee father

Aaron M. Frey, Attorney General, and Zack Paakkonen, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

South Paris District Court docket numbers PC-2018-13 and PC-2018-14

FOR CLERK REFERENCE ONLY