MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:       2020 ME 85
Docket:         Ken-19-502
Submitted
  On Briefs:    May 28, 2020
Decided:        June 9, 2020
Revised:        June 23, 2020; December 31, 2020

Panel:          GORMAN, JABAR, HUMPHREY, HORTON, and CONNORS, JJ.

IN RE CHILDREN OF JAMIE P.


PER CURIAM

[¶1]  A mother and father appeal from a consolidated judgment of the District Court (Augusta, *Rushlau, J.*) terminating their parental rights to their three children.  *See* 22 M.R.S. § 4055(1)(B)(2)(a), (b)(i)-(ii) (2020).  Both parents argue that the Department of Health and Human Services did not present sufficient evidence upon which the trial court could find that they are parentally unfit and contend that the court abused its discretion in finding that termination was in the children's best interests.  The father also contends that the trial court abused its discretion by engaging in improper sua sponte questioning of witnesses pursuant to Maine Rule of Evidence 614.  We affirm the judgment.

## I. BACKGROUND

[¶2]   In February 2019, the Department petitioned to terminate the parents' parental rights as to all three children.  *See* 22 M.R.S. § 4052 (2020). The trial court (*Rushlau, J.*) held a two-day hearing, from July 11 to July 12, 2019, on the Department's petition.  Both parents were present at the hearing and represented by counsel.  *See* 22 M.R.S. § 4054 (2020).

[¶3]  In a judgment dated November 21, 2019, the trial court terminated the parents' parental rights with regard to all three children.  *See id.* § 4055(1)(B)(2)(a), (b)(i)-(ii).  The trial court found by clear and convincing evidence that each parent is unwilling or unable to protect the children from jeopardy and that these circumstances are unlikely change within a time which is reasonably calculated to meet the children's needs, and that each parent has been unwilling or unable to take responsibility for the children within a time which is reasonably calculated to meet the children's needs.  *See id.* § 4055(1)(B)(2)(b)(i)-(ii).  The trial court also found by clear and convincing evidence that termination of the parents' parental rights is in the children's best interests.  *See id.* § 4055(1)(B)(2)(a).  Its findings were supported by competent evidence in the record.  *In re Child of Carl D.*, 2019 ME 67, ¶ 4, 207 A.3d 1202.

[¶4]    The trial court's judgment contained the following findings regarding the mother's fitness:

> After [the twins] were born in 2015 . . . there were a series of events which led both to legal proceedings and made the family situation unstable.  On August 14, 2015, [the father] filed a complaint for protection from abuse . . . .  He claimed that [the mother] had physically abused him and threatened to kill both him and the children.  He received a temporary and then a final protection order.  Although the final order was originally to remain in effect until September 4, 2017, the complaint was dismissed, and the order terminated on [the father's] motion on May 13, 2016.  Four months later [the father] returned to the same court and filed another complaint for protection from abuse . . . .  He once again described domestic violence by [the mother], including violence in the presence of the children.  [The father] once again received a protection order.  Once again [the father] returned to court within a few months and moved for dismissal of the complaint. . . . Meanwhile [the mother] had been prosecuted for the criminal conduct committed against [the father] . . . .  She ultimately pleaded guilty to Domestic Violence Terrorizing . . . .
>
> DHHS was involved with the family between 2015 and 2017. The primary purpose of their involvement was apparently to ensure that [the father] and the children were not living with [the mother]. . . .  DHHS began a more significant involvement in June 2017. [A caseworker] visited the . . . home of [a family member] . . . and found that [the parents] were living there with all three children. . . .  During the visit, [the father] told the caseworker about [the mother's] violence against him . . . .
>
> During the [termination] hearing [the father] confirmed . . . that [the mother] had engaged in repeated violence against him throughout this entire period.  He also confirmed that she had threatened to kill the children. . . .  It is clear that [the mother] engaged in significant domestic violence against [the father] for

several years and that when the children are in [the father's] presence they are exposed to this violence.

. . . .

. . . DHHS's Rehabilitation and Reunification Plan signed by [the mother] on January 19, 2018, described a series of steps [the mother] needed to take in order to make progress toward reunification. One step was to complete a batterers intervention program (BIP). Other steps included being employed, having stable housing, and developing an effective mental health treatment and medication program. While [the mother] has been working to some extent on all these issues, she has made relatively little progress. She began a BIP in Lewiston but . . . failed to complete the program. . . . Her housing situation was erratic for many months, and included "couch surfing," camping out in a tent for a period of time, and a stay in a homeless shelter. . . . She worked for brief periods for several different employers. . . . [The mother] engaged with [a counselor] at Kennebec Behavioral Health for many months . . . . However, [the mother's] progress was regularly disrupted for a variety of reasons. . . . [The counselor] saw no progress at all in one important area, which was [the mother] gaining insight on how to avoid conflict with others . . . .

DHHS arranged for [the mother] to have a trial placement with the twins in August of 2018. . . . A few days later [the mother] drove her car with the twins as passengers. They were in ordinary seat belts. [The mother] failed to secure them in child safety seats. . . . [The mother] drove through a stop sign . . . and collided with another vehicle. Both vehicles were damaged and [the mother's] was [totaled]. The twins had medical evaluations and some treatment but fortunately neither child was seriously injured. However, the emotional effect of the crash on the twins, and indirectly on [the older child], was significant.

[¶5] The court's supported evidentiary findings as to the father's parental fitness are as follows:

[The father] was the target of multiple acts of physically violent behavior by [the mother] over a period of years. [The mother] also threatened violence against both him and against the children. Initially he acted responsibly to protect the children when he obtained a protection order in 2015. Several months later he had the protection order terminated. His reason was that it was too difficult for him to take care of the children on his own. Within a short time, [the mother] engaged in more violent behavior. [The father] again acted responsibly by obtaining a second protection order. Once again, he had the order terminated. Once again, he allowed [the mother] to have access to the children. He was then, once again, the target of [the mother's] violent behavior . . . .

. . . [I]n June 2017, [the father] told the DHHS caseworker that he was overwhelmed by the responsibilities of being a parent of three children. . . . He terminated both protection orders and allowed [the mother] access to the children because he was incapable of providing appropriate care on his own. The testimony of [a family member] showed that as early as 2015 she and other family members were caring for the children for various periods of time . . . .

After DHHS placed the children with [a family member] in June 2017, [the father] had an opportunity to, at minimum, help provide care for [the oldest child]. He was not successful even in that limited role. [The family member] asked him to leave. He became homeless . . . .

The jeopardy order agreed to by [the father] emphasized his failure to protect the children from [the mother's] violent behavior. However, it also described [the father's] own unsafe behavior in leaving the children unsupervised despite their age and developmental needs . . . . The twins were only 2 1/2 years old and incapable of protecting themselves from harm. . . . [The oldest child] was placed with [the father] on a trial basis in August 2018. [The father] had a lapse in judgment in the fall of that year when he entered the vacant home of [the mother's] family to remove some

personal possessions. . . . DHHS temporarily interrupted the trial placement.

There was a far more serious event in January 2019. [The father] planned to pick up [the oldest child] at school in Augusta. He did not appear. . . . [The oldest child] was upset and concerned that [the father] had been in a car crash. . . . The trial placement was terminated.

. . . .

[The father's] situation deteriorated significantly between the end of the trial placement and the date of the [termination] hearing. He was evicted from his apartment. . . . After the eviction he began living with a man he knew only as "Q." . . .

. . . [The father] was charged with drug possession as a result of an encounter with a Gardiner police officer . . . . [The officer] found [the father] unconscious and slumped over in the front seat of his car in a parking lot. It was 3:00 a.m. There was a plate next to [the father] with a substance the officer identified as methamphetamine. . . . The resulting criminal case was pending at the time of the hearing . . . .

[¶6] The court also made the following supported findings regarding the best interests of the children:

Since the placement, the twins have been with [a family member] for all but the few days of the trial placement with [the mother]. . . . She has provided them with a safe and stable home for the majority of their lives, and they are thriving in that environment. . . . [N]either parent has made progress toward creating a home where the twins will be protected from harm. [The father's] life has deteriorated. It is in such disarray that he could not figure out how to have visits with the twins, and visits were suspended . . . .

[The oldest child] has done relatively well in his most recent placement. His life has been disrupted since 2015 by repeated changes in residence including the trial placement with [the father] which ended abruptly after several months. It has been difficult for him to make progress, although the care provided by [a family member], and by the current foster family, has been of great benefit. His recent contact with the parents has not been beneficial. . . . [The oldest child] has expressed the desire to reunite with [the father]. There is no indication of a similar desire as to [the mother]. [The father] has encouraged [the oldest child] to believe reunification is possible. . . . Whatever capacity [the father] once had to provide a safe home for [the oldest child] is not in existence now.

[¶7] Based on these supported findings, the trial court concluded that the parents were unwilling or unable to protect the children from jeopardy and that these circumstances are unlikely to change within a time calculated to meet the children's needs, and that the parents have been unwilling or unable to take responsibility for the children within a time reasonably calculated to meet the children's needs. 22 M.R.S. § 4055(1)(B)(2)(b)(i)-(ii). The court also concluded that termination of both parents' parental rights was in the best interest of each child. 22 M.R.S. § 4055(1)(B)(2)(a). The mother and father each filed a notice of appeal. *See* 22 M.R.S. § 4006 (2020); M.R. App. P. 2B(c)(1).

## II. DISCUSSION

A.  Sufficiency of the Evidence

1.  Parental Unfitness

[¶8]  On appeal, both parents contend that the record contains insufficient evidence for the trial court to conclude that they were unfit to parent the children.  Contrary to their contentions, the record indeed contains sufficient evidence to support the trial court's findings as to both grounds of parental unfitness with regard to each parent.  "We review the court's findings of fact for clear error and the court's ultimate determination that termination of the parental rights is in the child's best interest for an abuse of discretion." *In re Child of Olivia F.*, 2019 ME 149, ¶ 5, 217 A.3d 1106.  "We will affirm an order terminating parental rights when a review of the entire record demonstrates that the trial court rationally could have found clear and convincing evidence in that record to support the necessary factual findings as to the bases for termination."  *Id.* (quotation marks omitted).  "A court need find only one of four statutory grounds of parental unfitness to find that a parent is unfit to parent his or her child.  Where the court finds multiple bases for unfitness, we will affirm if any one of the alternative bases is supported by clear and convincing evidence."  *Id.* ¶ 6 (citation omitted) (quotation marks omitted); *see* 22 M.R.S. § 4055(1)(B)(2)(b) (2020).  "[T]he court must examine from the child's perspective—not the parent's—the time within which the parent can

take responsibility for a child and protect that child from jeopardy." *In re Children of Tiyonie R.*, 2019 ME 34, ¶ 6, 203 A.3d 824.

      a.    As to the Mother

[¶9]  The mother argues that "she has continuously moved forward towards reunification," and that her good faith efforts at rehabilitation and reunification are fatal to the Department's petition. However, competent evidence in the record supports the trial court's conclusion that the mother is unwilling or unable to protect the children from jeopardy and that these circumstances are unlikely to change within a time reasonably calculated to meet the children's needs, as well as its conclusion that the mother has been unwilling or unable to take responsibility for the children within a time reasonably calculated to meet their needs. 22 M.R.S. § 4055(1)(B)(2)(b)(i)-(ii).

[¶10]  Here, the mother, despite repeated efforts, failed to complete any of the goals set forth in her rehabilitation and reunification plan. She failed to complete a BIP program; her housing and employment situations were unstable at best; her relationship with the children's father remained volatile and continued to involve encounters with law enforcement; her work with counselors plateaued, and she terminated her relationship with her longtime counselor prior to the termination hearing. These facts, supported by record

evidence, suggest that the mother was unable or unwilling to take responsibility for the children and unable or unwilling to protect the children from jeopardy. 22 M.R.S. § 4055(1)(B)(2)(b)(i)-(ii).

[¶11] Furthermore, the record supports the trial court's conclusion that what little progress the mother did make occurred at such a slow pace that circumstances were unlikely to change within a time reasonably calculated to meet the children's needs. 22 M.R.S. § 4055(1)(B)(2)(b)(i)-(ii). She was not close to completing treatment for her domestically violent behavior, and at the termination hearing she categorically denied committing any such behavior—even in the face of overwhelming contradictory evidence. Over a two-year period during which the mother had access to support services she failed to make progress. The mother's contention that she has "continuously moved towards reunification" is not supported by the record. Rather, the record supports the trial court's conclusion to the contrary—that the mother is unwilling or unable to protect the children from jeopardy, and has been unwilling or unable to take responsibility for the children in a time reasonably calculated to meet their needs.

      b.    As to the Father

[¶12]  The father also argues that the record evidence is insufficient to support the trial court's finding that he is also unfit to parent the children because he is unwilling or unable to protect the children from jeopardy and take responsibility for the children in a time reasonably calculated to meet their needs.

[¶13]  Contrary to the father's contentions, the record supports the trial court's findings on both grounds.  The Department's involvement originally stemmed from concern that the father could not keep the children away from the mother and the domestic violence that was endemic to the relationship between the mother and the father.  Competent record evidence demonstrates that the father has not separated from the mother.  Furthermore, the father's circumstances—apart from his relationship—have deteriorated significantly since 2017.  He has experienced periods of homelessness.  He does not currently have an apartment or suitable housing for any of the children.  His relationships with family members who had previously assisted with childcare and housing are broken.  The circumstances of his recent arrest and the abrupt end of the trial placement with the oldest child suggest that he continues to struggle with substance abuse.

2.  Children's Best Interests

[¶14]  Both parents also argue on appeal that the record contains insufficient evidence for the trial court to conclude that termination was in the children's best interests.  The father contends that the absence of identified adoptive homes for the children requires that we vacate the trial court's termination order.  Contrary to the parents' contentions, the record is sufficient to support the trial court's finding that termination of each parent's parental rights is in the children's best interests, and the identification of adoptive homes is not a prerequisite to a finding that termination is in the children's best interests.  *In re Children of Meagan C.*, 2019 ME 129, ¶ 20, 214 A.3d 9.  "We review the court's ultimate conclusion regarding the best interest of the child for an abuse of discretion, viewing the facts, and the weight to be given [to] them, through the trial court's lens."  *In re Child of Carl D.*, 2019 ME 67, ¶ 5, 207 A.3d 1202 (quotation marks omitted.)

[¶15]  The record supports the trial court's conclusion that termination of each parent's parental rights would facilitate permanency and stability and therefore be in the children's best interests.  The two youngest children had been living with a family member almost exclusively for more than two years, and the same family member served as caregiver even before that placement became official.  The family member, however, was not a permanency option.

Neither parent had made any progress toward establishing a situation that could accommodate the two youngest children permanently. The mother's brief trial placement with the two youngest children ended when she crashed her car with the two toddlers secured only by adult seat belts. The father had not been able to arrange a safe place even for supervised visits with the children.

[¶16] The record also supports the trial court's conclusion that termination was in the best interest of the oldest child. The oldest child was particularly negatively affected by the frequent and abrupt changes in residences and caregivers. He expressed no desire to reunite with his mother. Although he expressed a preference to reunite with the father, the sudden termination of his trial placement with the father had derailed the oldest child's progress for some time thereafter. The father continued to foster in the oldest child unrealistic expectations of reunification, but visits with the child were not beneficial to the child. The father did not possess the means by which to provide a safe or supportive home for the oldest child, nor did it appear he would obtain those means in a time reasonably calculated to meet the oldest child's needs. The trial court did not abuse its discretion in concluding that termination of the parents' parental rights was in the children's best interest.

14

B.      Trial Court's Questioning of Witnesses

[¶17]  The father argues for the first time on appeal that the trial court abused its discretion by engaging in sua sponte questioning of witnesses at the termination hearing, the extent and nature of which "suggested a posture of advocacy and a retreat from impartiality."  However, contrary to the father's contentions, we discern no abuse of discretion on the part of the trial court with regard to its examination of witnesses at the termination hearing, and the trial record does not suggest any such "retreat from impartiality."

[¶18]  "Subject to the obvious caveat to maintain judicial impartiality, and not to assume the posture of an advocate, a presiding justice may interrogate witnesses."  *State v. Colomy*, 407 A.2d 1115, 1118 (Me. 1979) (citation omitted) (quotation marks omitted); *see* M.R. Evid. 614.  "So long as the trial judge intervenes for the purpose of clarifying testimony, saving time, or preventing a miscarriage of justice, he must be allowed considerable latitude in his questioning."  *State v. Greenwood*, 385 A.2d 803, 804 (Me. 1978).  "The paramount concern [regarding judicial interrogation] has been that the judge not participate in any manner from which the jury may infer that he endorses the cause of one side."  *State v. Pickering*, 491 A.2d 560, 564 (Me. 1985).  Therefore, where there is no jury, "this concern is absent."  *Id.*  Where a party

does not preserve his objection to a line of questioning by bringing it to the attention of the court in a timely manner, we review for obvious error. *See State v. Haycock*, 296 A.2d 489, 492 (Me. 1972).

[¶19]  Here, the trial court did not abuse its discretion in questioning the father or any other witness pursuant to Rule 614.  Although the Department and the parents were both represented by experienced counsel, the long and convoluted path of the Department's involvement with the children created challenges in bringing out a coherent chronology through witness testimony. In its role as factfinder, the court questioned several witnesses at length.  Its questions were limited to attempts to clarify and bring out facts key to its ultimate findings and judgment.  *Cf. Greenwood*, 385 A.2d at 804 (holding that a court's questioning of a witness was improper where the questions were "only marginally helpful in ascertaining the facts" and focused on impeaching a key witness).  Furthermore, the record does not suggest that the court's questioning of the father, in particular, was improper or revealed a retreat from impartiality.  The court questioned other witnesses at similar length, and its interrogation of the father was focused primarily on evidence of the *mother's* behavior.  The court's participation in the questioning of witnesses at the termination hearing was not improper.

### III. CONCLUSION

[¶20]  The trial court did not clearly err in finding by clear and convincing evidence that the mother and father were each unable or unwilling to protect the children from jeopardy or take responsibility for the children within a time reasonably calculated to meet the children's needs.  Nor did the trial court commit clear error or abuse its discretion in determining that termination was in each child's best interest.  *See In re M.B.*, 2013 ME 46, ¶ 37, 65 A.3d 1260. Finally, the trial court did not commit obvious error in its questioning of witnesses.  *See Haycock*, 296 A.2d at 492.

The entry is:

Judgment affirmed.

Andrew Wright, Esq., Brunswick, for appellant mother

David Paris, Esq., Bath, for appellant father

Aaron M. Frey, Attorney General, and Hunter C. Umphrey, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services